IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,         :        Case No. 3:05-cv-153

                                            District Judge Walter Herbert Rice
      -vs-                                Chief Magistrate Judge Michael R. Merz

                                         :

EDWARD L. ERB, D.O.,

        Defendant.

**REPORT AND RECOMMENDATIONS**

This case is before the Court on Motion of Plaintiff, the United States of America, for summary judgment pursuant to Fed. R. Civ. P. 56 (Doc. No. 8). The Motion was filed after the discovery cut-off ordered by the Court in its Scheduling Order, so that both parties had a full opportunity to develop any facts necessary to adjudicate the Motion or to try the case.

Defendant, who is proceeding herein *pro se*,[1] was duly notified by the Court of his obligation to respond to the Motion, of the quality of evidence required to respond, and of the date on which his response was due. One day after his response was due and without leave of court to file late, Defendant filed his Motion Against Summary Judgment (Doc. No. 14) which includes no certificate of service and is supported by no evidence. In the interest of completeness, the Court considers Defendant's response, although it would be subject to being stricken on the bases listed.

---

[1] Defendant is a self-employed physician who has given no indication of indigence and is accordingly proceeding *pro se* by his own choice.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n*., 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal*

*Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990).  Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

The facts set forth in this Report are admitted or established by evidence competent under Fed. R. Civ. P. 56(e) and not controverted by opposing competent evidence.

**Analysis**

Plaintiff's Motion relies on Defendant's deposition (Doc. No. 13) and the Affidavit of Ann Brieck, the person at Ohio University who accepted Defendant's applications for the money he received to pursue his medical education.  The documentation submitted in evidence, the authenticity of which Defendant does not deny, establishes that Defendant signed two separate agreements which are entitled "Student Agreement for Primary Health Care Service" (Erb. Tr. 14-15; Exhs. B, C) which required him to perform primary physician services in return for the funds being provided to him to complete his medical education and to repay the funds if he failed to perform as he had promised. Defendant signed an Entrance Interview form which sets forth his obligations under the scholarship program. (Erb.Tr. 21-22; Exh. K).  The first paragraph of the form reads as follows:

> I have discussed and understand the obligations and requirements associated with the EFN/FADHPS scholarship, which are described in the student agreement for primary health care service contract that I signed....

Defendant also signed an Exit Interview form with similar language. (Erb. Tr. 24; Exh. L).

Defendant admitted that he is aware of the nature of contracts and that failure to fulfill one's obligations under a contract generally would result in breach of the agreement. (Erb Tr. 19-20). Further, although Defendant testified that he did not recall signing or reading the scholarship documents, Ann Brieck, the Associate Director of Student Affairs at Ohio University, College of Osteopathic Medicine, Athens, Ohio, testified by affidavit that she conducted the entrance and exit interviews with Defendant and explained the obligations and requirements of the scholarship program in which he participated. (Brieck Aff. ¶7). Ms. Brieck recalls discussing the terms and conditions of the award with Defendant by telephone. (Brieck Aff. ¶ 7). Thus, Defendant cannot reasonably claim to have been unaware of the requirements of the scholarship program. Defendant acknowledged that he understood that the scholarship became a "loan" if he did not fulfill his obligations. (Erb Tr. 49). He further acknowledged that he has no record that any payments were made toward this debt. (Erb Tr. 50).

Defendant admitted under oath at his deposition that he had not fulfilled his obligations under the agreements he made:

> Q. What kind of training were you receiving?
>
> A. I was doing general surgery, general surgery residency.
>
> Q. And under which program in paragraph one would that general surgery fit?
>
> A. It wouldn't specifically fit in any of those programs.

(Erb Tr. 34).

Defendant admits that the residency program he entered did not fit within the category of permissible residency training programs. Indeed, the legislative history which established the financial aid program from which Defendant benefitted specifically identifies surgery as the type of specialty not covered by the program:

> The majority of these important programs in Title VII assist disadvantaged, low income, and other students who can no longer afford the high costs of education to become doctors and other health professionals; create opportunities for physicians to become primary care practitioners instead of entering surgical and other highly technical specialties and subspecialties; and, address national shortages in public health and preventive medicine.

H.R. Rep. No. 99-145 at 5 (1985), reprinted in 1985 U.S.C.C.A.N. 435, 456 (1985).

During the preliminary pretrial conference, Defendant indicated that he was misled about the primary care requirements of his scholarships. However, upon cross examination at his deposition, he admitted that he was not misled:

> Q. Now, during the preliminary pretrial conference, you indicated that you were mislead (sic) on the primary care requirements. Do you remember that conversation?
>
> A. I don't know that I said that I was mislead (sic) or if I was just not aware of all the details.
>
> Q. So you are not saying that someone mislead (sic) you?
>
> A. Right. Certainly not. No one mislead (sic) me.

(Erb Tr. 47-48).

In his Motion Against Summary Judgment, Defendant attempts to blunt the effect of this admission by asserting:

> In the uncorrected deposition the defendant replied that he was not mislead [sic] regarding the requirements of the grant, the reply was more accurate a response that he was not "intentionally" mislead [sic] (by Miss Brieck see Exhibit D), however, no attention was given to whether the defendant was properly informed and understood the requirements. Low income students are inundated with a volume of documents related to loans and grants that without an attorney available could not possibly understand all aspects of all agreements.

(Motion Against, Doc. No. 14 at 2.)

This argument is unpersuasive to the Court for a number of reasons. First of all, Defendant reserved the right to make changes to the deposition, but then never bothered to respond to the court

reporter's notice of opportunity to do so and she filed the transcript without his signature (Doc. No. 13 at 53).

Secondly, the distinction offered between "misled" and "intentionally misled" is unpersuasive. It is very unlikely that an attorney reading the papers in question would have been better informed about what constitutes "primary care" than a medical student reading the same documents. Furthermore, Defendant does not indicate he ever showed any surprise when notified in 1996 and subsequent years that he was in default for entering a surgery residency instead of a primary care residency nor did he do anything to correct the default.

Defendant claims he has complied with the "spirit of the grant." He asserts in his Motion Against that "[t]he defendant provides services for indigent patients in more than 50% of the time; these services are both specialized as well as primary care." (Defendant provides no corroboration of his unsworn assertion.) However much quality medical care Defendant is providing indigent patients, he has not kept the promise he made which was a condition of the grant he received. Congress did not provide funds to subsidize training for surgery, even for indigent patients, but for primary care. The language from the legislative history quoted in the Government's Motion demonstrates that it was a shortage particularly of primary care physicians which motivated the funding, not a general shortage of medical services for the indigent.

Defendant offers no dispute as to the amount of the indebtedness. The Government's Certificate of Indebtedness shows the balance as of November 1, 2004, to have been $57,588.78 comprising $27,228 in principal and $30,360.78 in accrued interest. The Government is further entitled to interest from November 1, 2004, until the date of judgment at the rate of $9.98 per day, a total of $4,231.52 as of the date of this Report.

There is no genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law. The Court should enter judgment in favor of the Plaintiff and against Defendant in the amount

of $61,820.30 plus $9.98 per day from the date hereof until the date of judgment plus post-judgment interest.

December 29, 2005.

s/ **Michael R. Merz**<br>Chief United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).